# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **COUNTRYWIDE HOME LOANS, INC.** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 10-3589** |
| **MARK A. STEWART & S. J. BEAULIEU, JR.,**<br>**CHAPTER 13 TRUSTEE** | * | **SECTION "D"(2)** |

## ORDER AND REASONS

Before the court is the Appeal of Countrywide Home Loans, Inc. ("Countrywide"), from the August 23, 2010 Order[1] issued by the United States Bankruptcy Court in Bankruptcy No. 03-18462-EWM. Appellee, S. J. Beaulieu, Jr., Chapter 13 Trustee ("Trustee") filed a response brief, to which Countrywide replied. This matter is before the court on briefs, without oral argument. Now, having considered the briefs of counsel, the record below and the applicable law, this court finds that the Bankruptcy Court's Judgment should be reversed and vacated and the case remanded for further proceedings consistent herewith.

## I. Facts and Proceedings Below

The facts of this case are not disputed by the parties. On October 30, 2003, J. Edward Thompson, attorney at law, filed a Chapter 13 Petition including a 1% Chapter 13 plan on behalf of Mark A. Stewart (Debtor) in the United States Bankruptcy Court for the Eastern District of Louisiana in case number 03-18462. (Bkrtcy. Rec. Doc. 1 and 2).

Debtor's sole secured creditor held a mortgage debt of $76,617.62 on debtor's personal

---

[1]Reasons for Decision dated August 23, 2010 (Bkrtcy. Rec. Doc. 108); Order dated August 23, 2010 (denying Trustee's Motion to Dismiss Case, inter alia) (Bkrtcy. Rec. Doc. 109); *In re Mark A. Stewart,* 2010 WL 3490976 (Bkrtcy. E. D. La. Aug. 23, 2010).

residence.  By various acts of assignment, the mortgage debt was transferred to Washington

Mutual Bank and then Countrywide Home Loans, Inc. [2]

Debtor's Chapter 13 Plan identified a pre-petition arrearage amount of $5,622.41 owed to

mortgage servicer Washington Mutual Bank ("Washington Mutual"), which entity was listed as

a secured creditor on the schedules of the captioned bankruptcy proceeding.   Said scheduled

mortgage arrearage ($5,622.41) to be paid via the Chapter 13 Plan represented less than nine (9)

mortgage installments of $653.00 each. (Bkrtcy. Rec. Doc. 2).

Notice of this Chapter 13 Plan was forwarded to Washington Mutual Bank c/o Dean

Morris, attorneys-at-law, to P.O. Box 2867, Monroe, Louisiana 71207-2867.  As noted by the

bankruptcy court, Countrywide does not dispute that it or its predecessor in interest was given

notice of the filing of the case, the date of the creditor's meeting and the bar date – *i.e.*, the last

date to file proofs of claim (03/09/2004).[3]

On February 12, 2004, the bankruptcy court's order confirming the Chapter 13 Plan

("Plan") issued.  (Bkrtcy Rec. Doc. 26).  Although Debtor's Chapter 13 Plan listed a mortgage

arrearage amount that Debtor proposed to cure, no distributions were made to Washington

Mutual by the Trustee.  It is undisputed that Washington Mutual (Countrywide's predecessor)

never filed a proof of claim in this case.

The Plan purports to cure $5,622.41 in pre-petition defaults owed to Countrywide.

---

[2]*See* Claims Register, Proof of Claim (POC) 7-1 (including a Statement of Account, the
Mortgage encumbering Debtor's homestead and Assignment).

[3]Reasons for Decision dated August 23, 2010 (Bkrtcy. Rec. Doc. 108); Order dated
August 23, 2010 (denying Trustee's Motion to Dismiss Case, *inter alia*) (Bkrtcy. Rec. Doc. 109).
*See also In re Stewart*, 2010 WL 3490976 * 1 (Bkrtcy. E. D. La. Aug. 23, 2010), *stay denied by*,
2010 WL 4259940 (Bkrtcy. E. D. La. Oct. 21, 2010).

Debtor also committed to pay all post-petition accruing installments through direct payments to Countrywide.  As a secured claimant, Countrywide retained its lien to secure repayment of the pre-petition default set forth in the Plan.  On completion, the Plan provided that all pre-petition defaults were discharged.

On April 8, 2004, Washington Mutual Bank filed a Motion to Lift Stay As to the Debtor's Property located at 154 Trafalgar Square, Slidell, Louisiana 70460, alleging that the debtor's failed to make four (4) post petition arrearage payments of $773.00, reflecting a total of post-petition mortgage arrearage of $2,559.50.  The Motion to Lift Stay was filed by Dean Morris, attorneys-at-law, on behalf of Washington Mutual Bank.  (Bkrtcy. Rec. Doc. 28).

On April 13, 2004, the Chapter 13 Trustee filed a Trustee's Notice of Intention to Pay Claims, reflecting that Washington Mutual had not filed a claim for an arrearage and that merely $6,019.19 in proofs of claim had been filed.  It reads in pertinent part:

> "Notice is hereby given that the Trustee intends to pay creditors who have filed timely claims as detailed below, pursuant to 11 U.S.C. 502(a).  Any party in interest who objects to the payment of any of these claims must file an objection, with Service upon the Trustee, the debtor and the claimant, pursuant to FRBP 3007.  Absence of timely filed objections will be construed as approval by the debtor of the claims filed herein." (Bkrtcy. Rec. Doc. 31)

On May 13, 2004, the bankruptcy court entered a Consent Order, memorializing the agreement between Countrywide and the Debtor and reflecting that his post-petition arrearage figure was $2,559.50.  The amount of $219.00 was paid at court leaving a remaining balance of on the arrearage of $2,231.76, which was to be paid outside of the Chapter 13 Plan at the rate of $371.96 a month for six (6) months.  A drop dead order also issued via the Consent Order, providing that  Debtor's failure to catch up on missed payments and to make future payments

would result in lifting the automatic stay, *inter alia*. (Bkrtcy Rec. Doc. 34).

On July 2, 2004, the Trustee filed "Trustee's Ex Parte Motion to Amend Plan" seeking to increase the percentage paid to unsecured creditors from 1% to 99%.  (Bkrtcy. Rec. Doc. 38). No objection was filed by debtor, his attorney, any creditor or any party in interest.  The bankruptcy court (then, the Honorable Judge T. M. Brahney) executed the an order amending the plan increasing the percentage paid to unsecured creditors to 99%.  (Bkrtcy. Rec. Doc. 40).

On December 21, 2006, Countrywide notified the Chapter 13 Trustee that it was now the servicer on the Debtor's mortgage debt.   On July 5, 2007, after having assumed servicing of the Debtor's home loan, Countrywide filed a "Motion to Allow Late Filed Proof of Claim." (Bkrtcy. Rec. Doc. 70).   More particularly, Countrywide advised the bankruptcy court that, at the time of the filing of this case, "Debtor owed Creditor $16,404.23 in monthly payment arrearages" itemizing the same.  *Id.*  Countrywide further explained that the allowance would not prejudice the Debtor because, should the late claim not be filed, the Debtor would not receive the fresh start sought by filing the Chapter 13 bankruptcy.  *Id.* at ¶ 4.

On August 16, 2007, following a hearing, the bankruptcy court entered an order allowing the late filing of Countrywide's pre-petition arrearage claim in the full amount of $16,404.23. (Bkrtcy. Rec. Doc. 73).[4]

On August 21, 2007, Countrywide filed its proof of claim no. 7-1 for a *pre*-petition arrearage of $16,404.23, representing twenty (20) back due installments of $653.00, late charges

---

[4]*See also* Notice of Appearance and Request for Notice filed by Herman Wessels on behalf of Countrywide (Bkrtcy. Rec. Doc. 74).

and costs and asserting its secured claim in the amount of $73,164.25.[5]

Thereafter, on August 22, 2007, the Trustee filed Chapter 13 Notices of Intent to Pay Additional Claims of Countrywide Home Loans for mortgage arrears in the amounts of $16,404.23 and $56,760.62. (Bkrtcy. Rec. Doc. 75 and 76).   No objection was filed by attorney for Debtor, J. Edward Thompson, although he was in fact practicing in the United States Bankruptcy Court for the Eastern District of Louisiana at that time.[6]

On November 12, 2009, the Chapter 13 Trustee filed a Motion to Dismiss for Unfeasibility and served a copy on both Debtor and his counsel.  (Bkrtcy. Rec. Doc. 79).[7]  As of the date of the filing of the Chapter 13 Trustee's Motion to Dismiss, the Debtor had been in Chapter 13 for a total of seventy-two (72) months.  The debtor had a balance of $15,118.67 remaining unpaid on the plan in light of Countrywide's late-filed proof of claim.

Though service was made upon the debtor, notifying him personally that the hearing on the Chapter 13 Trustee's Motion to Dismiss was scheduled for December 8, 2009, the motion was not opposed.  At the December 8, 2009 hearing on the Motion to Dismiss, the bankruptcy court had an unopposed Motion to Dismiss for Unfeasibility before it but *sua sponte* ordered the

---

[5]*See* Claims Register at Proof of Claim No. 7-1 filed on August 21, 2007 in Case No 03-18462 Chapter 13 (along with Exhibit "A" Statement of Total Arrearage in the amount of $16,404.23 and Mortgage Instrument No. 1209259/Registry No. 990664 re property located in St. Tammany Parish, Louisiana bearing address of 154 Trafalgar Square, Slidell, Louisiana, 70461 but *no Note*).

[6]*See* Motion to Reconsider filed in Case No. 07-10171 (Chapter 13/EDLA) filed on August 15, 2007(Doc. No. 57); Certificate of Service for Supplemental Memorandum filed September 7, 2007 by Thompson, J. on behalf of Debtor in Case No. 07-10171 (Chapter 13/EDLA) (Doc. No. 63)

[7]*See* 11 U.S.C. § 1322 (mandating that a plan may not provide for payments over a period longer than five (5) years).

Chapter 13 Trustee to object to Countrywide's late-filed proof of claim.[8]

On December 10, 2009, the Chapter 13 Trustee filed an Objection to Countrywide's Claim No. 7 pursuant to the bankruptcy court's order and Notice of Hearing. (Rec. Doc. 82). The Trustee's singular objection to Countrywide's claim for arrearage was that it was filed in the 40th month of plan, which was beyond a reasonable time; the Trustee also noted that his Motion to Dismiss for Unfeasibility was pending, the bankruptcy court having continued it to January 12, 2010.[9]   On January 5, 2010, Countrywide filed its Response to the Trustee's Objection, appending a copy of the Mortgage and Note.[10]  (Bkrtcy. Rec. Doc. 84).

On January 12, 2010, the bankruptcy court conducted a hearing on Countrywide's Motion to Dismiss Plan for Unfeasibility and the Trustee's Objection to Countrywide's claim.[11] Pursuant to the hearing, the bankruptcy court took the matter under advisement, directed that no

---

[8]*See* Memo to Record re December 8, 2009 Hearing (noting the court ordered a continuance of the matter to 1/12/2010, Trustee to file an objection to the claim of Countrywide) (Bkrtcy. Rec. Doc. 81); *See* Transcript of the December 8, 2010 Hearing (wherein the bankruptcy court observed that (1) counsel was telling the court two things – that either or both when the *Mendoza* was originally filed it was unfeasible or the Plan was unfeasible with the *Mendoza*; (2) assuming that Countrywide's later proof was not in compliance with the *Mendoza*, that is problematic because it would not have been approved; and (3) stating an objection to Countrywide's proof of claim must be filed – *i.e.*, "that's what the Trustee has to do")(Bkrtcy. Rec. Doc. 85).

[9]Chapter 13 Trustee's Objection to Claim 7 at ¶ VI, p. 2 of 3 (Bkrtcy. Rec. Doc. 82).

[10]*See* Response to Trustee's Objection to Countrywide's Claim, Mortgage, Note (indicating yearly interest due at the rate of 8.3750% Interest), Statement as to Trustee's Disbursements on Countrywide's Claim filed January 5, 2010 (Bkrtcy. Rec. Doc. 84).

[11]*See* Transcript of the January 12, 2010 Hearing at pp. 8-9 (Bkrtcy. Rec. Doc. 100) ("The Court: Nobody paid attention....  So now I've got malpractice by Mr. Thompson.  I've got the Trustee not watching out for the debtor....  And basically Countrywide is sitting on its rights....").

payment be made to Countrywide or anybody.[12]  Thereafter, pursuant to the bankruptcy court's

January 14, 2010 order,[13]  both Countrywide and the Trustee submitted post-hearing briefs.[14]   In

his objection to Countrywide's proof of claim, the Trustee reminded the bankruptcy court of its

pending Motion to Dismiss for Unfeasibility pointing out that the Debtor was uncooperative

throughout the process.  The Trustee highlighted:

> [T]he difference between a nine (9) month pre-petition mortgage arrearage and a
> twenty (20) month mortgage arrearage is not a minimal miscalculation made by
> the debtor.  This debtor has been allowed to reside in his family home for a period
> in excess of six (6) years because he failed to include 2/3's of his mortgage
> arrearage in the Chapter 13 plan.

(Bkrtcy. Rec. Doc. 93 at p. 4).

The Trustee further pointed out that:

> [Even if] Washington Mutual would have filed timely proof of claim in this
> matter ... [t]he case would have likely been dismissed on June of 2004 for
> unfeasibility as the debtor would have been required to double his monthly
> Chapter 13 installments from $199.50 per month to $399.00 per month.  The
> debtor's Schedules clearly reflect no additional income with which to pay an
> increased payment to the Trustee.
>                                            * * *
> The debtor has failed to contact the Trustee's office.  Furthermore, the debtor is
> three (3) months in arrears to the Chapter 13 Trustee (a total of $647.00)....

*Id.*

---

[12]*See* Transcript of the January 12, 2010 Hearing at p. 9 (Bkrtcy. Rec. Doc. 100) ("Freeze
everything.").

[13]*See* Order dated January 14, 2010 (ordering Countrywide to submit Notices received
during the case and records substantiating the amounts owed under the proof of claim, including
but not limited to the complete loan history and supporting documents for all charges in the
format set forth in *Jones v. Wells Fargo (In re Jones),* case no. 06-1093, pleading no. 69)
(Bkrtcy. Rec. Doc. 87).

[14]*See* Trustee's Memorandum filed February 17, 2010 (Bkrtcy. Rec. Doc. 93);
Countrywide's Post-Hearing Memorandum and Evidence (including Assignment, Note of
Evidence, Notices, Pre-petition calculation and Invoices) (Bkrtcy. Rec. Doc. 94-98, 102*,* 106).

On February 25, 2010, the Trustee filed a Motion to Dismiss for Noncompliance – *i.e.*, Debtor's failure to make plan payments. (Bkrtcy. Rec. Doc. 104).[15]

On August 23, 2010, the Bankruptcy Court entered an Order (Bkrtcy. Rec. Doc. 109) and Reasons for Decision (Bkrtcy. Rec. Doc. 108)[16] (1) denying the Trustee's Motion to Dismiss, (2) sustaining the Chapter 13 Trustee's Objection to Countrywide's Proof of Claim, (3) disallowing Countrywide's proof claim in excess of $715.91, (4) ordering Countrywide to reimburse the Chapter 13 Trustee the sum of $2,316.91 to satisfy the remaining indebtedness owed unsecured creditors, and (5) directing Countrywide to credit $1,949.61 to Debtor's loan account. (Bkrtcy. Rec. Doc. 108 and 109).  The bankruptcy court also ordered the Chapter 13 Trustee to file a Notice of Plan Completion within (2) days despite the fact that the Trustee had yet to receive the $2,319.91 from Countrywide – *i.e.*, funds that were to be distributed to unsecured creditors – and had not closed the case.

The bankruptcy court highlighted that the conflict it was faced with was a "worst case scenario for the 'honest but unfortunate debtor'"[17] and further explained:

> Initially, [the Debtor] was represented by counsel who prepared filed and served a copy of his proposed plan of repayment on all creditors including Countrywide. Debtor's Plan provided for payments of $5,642.91 on pre-petition amounts owed Countrywide.  In addition, Debtor committed to continue to make regular monthly installment payments equal to the accruing monthly mortgage note payments directly to Countrywide.
>
> Countrywide received the plan but did not object to its terms.  Forty-six months

---

[15]*See also* Memo to Record dated March 18, 2010 (continuing without date the hearing on the Trustee's Motion to Dismiss for Failure to Make Plan Payments) (Bkrtcy. Rec. Doc. 107).

[16]*See also In re Mark A. Stewart (Debtor),* 2010 WL 3490976 (Bkrtcy. E. D. La., August 23, 2010).

[17]*In re Stewart,* 2010 WL 3490976 * 3 (Bkrtcy. E. D. La. Aug. 23, 2010).

into Debtor's case, Countrywide realized that it had not received any distributions because it had not filed a proof of claim.  It then filed a Motion for Permission to file late claim.

Counsel for Countrywide represented in the Motion that the [late] claim would not prejudice the Debtor.  Trustee's counsel did not argue otherwise.  The Debtor did not appear at the hearing....  Since no one objected to the late filing of Countrywide's claim, the Court gave Countrywide permission to file it. However, at that time, the Court was unaware that the filing of the claim would make the Plan unworkable as confirmed.  Based on Countrywide's representation that the claim would not prejudice the Debtor and Trustee's silence, the Court assumed just the opposite.  Neither Countrywide nor Trustee objected to the continuation of Debtor's case at that point in time.  Instead, Trustee made and Countrywide collected payments for the next fourteen (14) months even though both evidently believed the Plan was now unfeasible and Debtor could not obtain a discharge.

* * *

If a proposed plan does not provide distributions in an amount sufficient to cure a secured creditor's default, Trustee will routinely object to or debtor's counsel will amend the proposed plan to rectify the situation.  This occurs with or without an objection from the secured creditor.  Of course, if no proof of claim has been filed, there is no mechanism to verify the debtor's estimate of the pre-petition default, and everyone involved in the process must assume that the plan correctly provides for the secured lender's claim.

* * *

If a debtor includes for payment in his plan the "deemed allowed" secured claim, the plan can be confirmed while simultaneously reserving the right to review and object to the claim at a later date if warranted.  Otherwise, confirmation, and distribution to all claimants would be delayed until litigation over the claim was completed.  Because the Code allows for confirmation of a plan while reserving the right to object to claims, all claimants, including secured creditors, begin receiving payments within a reasonable amount of time.

* * *

Because plans cannot extend beyond sixty (60) months, it is critical to a debtor's fresh start that the correct pre-petition amount owed to a secured claimant be established early lest distributions intended for the secured class be diverted to the unsecured.  Thus, timely filing of a major secured claim is paramount to the overall success of the case.[18]

The bankruptcy court concluded that the Debtor's confirmed Plan was *res judicata*.  The

---

[18]*Id*. at ** 4-5.

bankruptcy court explained that *Simmons* turned on whether or not the confirmation process

could substitute for a formal claim objection and, through confirmation, alter a claim, to wit:

> [T]he *Simmons* Court reasoned that notice of the objection or service of the
> complaint would be required on the claimant.  Because the plan confirmation
> process did not specifically require service of the plan itself, or necessarily
> highlight the proponent's intention to reduce or object to filed claim, the *Simmons*
> Court concluded that notice of confirmation was procedurally insufficient to
> substitute for an objection to the claim.  Without proper notice, the claimant had
> not been afforded due process.  As a result, the confirmation order was not *res
> judicata* on the issue.[19]

The bankruptcy court explained that *Simmons* spawned a lengthy list of cases which led

secured creditors to conclude that nothing in a plan could substitute for a formal objection to a

secured claim or alter its treatment.[20]  The bankruptcy court read the recent Supreme Court

decision in *Espinosa*[21] as challenging this conclusion, noting that the "*Espinosa* Court held that a

confirmed plan was binding on the parties and a claimant's failure to object to its treatment in

the plan bound it to the plan's provisions even if those provisions violated the Code or

accomplished discharge or disallowance of a claim through a procedurally defective method."[22]

The bankruptcy court further opined that:

> *Espinosa* cannot be distinguished from *Simmons* or its progeny.  In both *Simmons*

---

[19]*Id.* at * 7.

[20]Jurisprudence pre-dating *Espinosa, supra,* such as *Simmons,* 765 F.2d 547 (5th Cir.
1985) and *Matter of Howard*, 972 F.2d 639 (5th Cir. 1992) did not treat confirmed Chapter 13
plan as necessarily binding on creditors holding secured claims, even creditors that had notice of
the plan's treatment of their claims.  Debtors were required to object to creditors' claims and
initiate contested matters, failing which the confirmed Chapter 13 plan's treatment of secured
debt was ineffective.

[21]*United Student Aid Funds, Inc. v. Espinosa*, – U.S. –, 130 S.Ct. 1367, 176 L.Ed.2d 158
(2010)

[22]*In re Stewart,* 2010 WL 3490976 * 7.

and *Espinosa*, the claimants were noticed of the bankruptcy case and the confirmation hearing, objection deadline and the plan.  Both claims were entitled to treatment not provided for by the plans but both were confirmed, and the orders became final.   While *Simmons* reasons that a debtor's failure to follow the procedural requirements for challenging a claim constituted failure of due process, *Espinosa* squarely rejected this argument.[23]

The bankruptcy court concluded:

> Under the precedent set by *Espinosa*, Countrywide's failure to object to its treatment under the Plan after notice, results in a reduction of the amount owed regardless of the amount set forth in its proof of claim.  That amount forms the maximum amount Countrywide may receive for its claim.[24]

## II. Assignments of Error

Countrywide asserts that the bankruptcy court erred in the following particulars.

1.   The Bankruptcy Court erred in holding that *United Student Aid Funds, Inc. v. Espinosa,* 130 S.Ct. 1367 (2010) limits Countrywide's right to recover pre-petition mortgage arrearage to the amount recited in Debtor's confirmed Chapter 13 Plan;

2.   The Bankruptcy Court's August 23, 2010 order
     a.   is barred by *res judicata* and the doctrine of collateral estoppel;
     b.   erroneously ignores the Note filed by Countrywide; and
     c.   constitutes a denial of Due Process.

3.   The Bankruptcy Court lacked jurisdiction to enter the August 23, 2010 order because:
     a.   11 U.S.C. § 105(a) does not "'constitute a roving commission to do equity;'" and
     b.   no 11 U.S.C. § 502(j) challenge was raised and, in any event, any such challenge would be barred by res judicata or collateral estoppel.

---

[23]*In re Mark A. Stewart*, 2010 WL 3490976 * 8 (noting that "*In re Matter of Chestnut*, 356 Fed.Appx. 732, 2009 WL 4885018 (5th Cir. 2009) appears to recognize this result" and, "although not completely analogous to the facts of this case or *Espinosa,* the *Chestnut* Court held that *res judicata* applies to confirmed Chapter 13 plans citing *Travelers Indemnity Co. v. Bailey*, __ U.S. __, 129 S.Ct. 2195, 174 L.Ed.2d 99 (2009)....").

[24]*Id.* at * 8.

4.      The Bankruptcy Court erred in entering the Discharge Order in advance of
completion of payments under the Plan.[25]

This case is unusual in that both Countrywide (appellant) and the Chapter 13 Trustee
(appellee) first assert that the bankruptcy court erred in holding that *United Student Aid Funds,
Inc. v. Espinosa,* 130 S.Ct. 1367 (2010) is applicable to this case and limits Countrywide's right
to recover pre-petition mortgage arrearage to the amount recited in Debtor's confirmed Chapter
13 Plan.[26]  Countrywide contends that reversal of the Bankruptcy Court's holding premised on the
applicability of *Espinosa, supra,* is warranted and will result in the Debtor still owing amounts to
cure the arrearage on his home mortgage and, in any event, said authority provides no basis for
the bankruptcy court's limitation of Countrywide's claim.[27]  The Chapter 13 Trustee's position is
simply that *Espinosa, supra,* was misapplied in this case.[28]

The Chapter 13 Trustee does not agree that the bankruptcy court was barred by either *res
judicata* or collateral estoppel from reviewing the proof of claim filed by Countrywide; however,
the Trustee does take issue with the bankruptcy court's suggestion that Trustees' practice of not
objecting to creditor's secured claim might be improper.  The Trustee submits that pursuant to
*Nobleman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106 (1993),  *In re Simmons,* 765
F.2d 547 (5th Cir. 1985) and 11 U.S.C. § 1322(b)(2) no objection was filed to this type of proof of

---

[25]Appellant's Brief (EDLA Rec. Doc. 20).

[26]Brief of Appellant Countrywide filed January 25, 2011, at pp. 8-11 (EDLA Rec. Doc.
20); Brief of Appellee Chapter 13 Trustee filed February 4, 2011, at pp. 7-8 (EDLA Rec. Doc.
21); Reply Brief of Appellant Countrywide filed February 18, 2011 at p. 3 (noting that even the
Trustee recognizes that *Espinosa* involved the distinct legal treatment of an *unsecured* student
loan, while home loans are subject to specific, controlling precedent providing for additional
protection during bankruptcy) (EDLA Rec. No. 22).

[27]Appellee's Brief at 8, 13; Appellant's Reply Brief at p. 3.

[28]*Id.* at 8.

claim because a mortgage on a debtor's principal residence cannot be modified by a Chapter 13 plan and the mortgage obligation passes through the Chapter 13 process.  With that caveat, the Trustee agrees with the bankruptcy court regarding the provisions of 11 U.S.C. § 502 (j) – *i.e.*, a claim that has been allowed or disallowed may be reconsidered for cause and the court therefore had a right to revisit the proof of claim.  The Trustee submits that it was in fact aggrieved by Countrywide's filing a late proof of claim in the 40th month of the plan, because such action denied the debtor a reasonable expectation of discharge.

Additionally, the Trustee shares Countrywide's position that the Bankruptcy Court erred in entering the discharge order because arguably the Debtor will still owe amounts on Countrywide's arrearage should a higher court rule that the bankruptcy court erroneously applied *Espinosa, supra,* to the facts of this case.[29]

Finally, the Trustee highlights that the debtor in this case is not "an innocent but unfortunate debtor."  (EDLA Doc. No. 21 at p. 12).   Indeed, "[t]he trier of fact has never met this individual and has no factual basis for framing [the debtor Mr. Stewart] in this light."  *Id.*  Although the office of Chapter 13 Trustee provided notice the debtor personally of all pending motions and hearings and "contacted debtor directly by telephone" both in August of 2007 and November of 2009, "advising him to retain alternate counsel who might be able to resolve the feasibility problem," "Mr. Stewart did not retain counsel, did not object to the Trustee's Motion to Dismiss for Unfeasibility and did not appear at the hearing[s] on the Motion to Dismiss on December 8, 2009 and January 12, 2010."  (EDLA Rec. Doc. No. 21 at p. 11)

---

[29]Appellee's Brief (respectfully averring that *Espinosa* did not overrule *Nobleman*, *Simmons* and 11 U.S.C. § 1322(b)(2)) (EDLA Rec. Doc. 21).

### III. Jurisdiction and Standard of Review

This court has jurisdiction over Countrywide's appeal from the bankruptcy court's order

pursuant to 28 U.S.C. § 158(a).   In this regard, a district court functions as an appellate court,[30]

reviewing the bankruptcy court's findings of fact for clear error and the bankruptcy court's

conclusions of law *de novo*.[31]   A court "'by definition abuses its discretion when it makes an error

of law.'"[32]

Findings of fact, whether based on oral or documentary evidence, shall not be set aside

unless clearly erroneous,[33] and due regard shall be given to the opportunity of the bankruptcy

court to judge credibility of witnesses.[34]   "When a finding of fact is premised on an improper legal

standard, or a proper one improperly applied," that finding is reviewed *de novo*.[35]   The application

---

[30]*Webb v. Reserve Life Insurance Co. (In re Webb)*, 954 F.2d 1102, 1103-1104 (5th Cir. 1992).

[31]*Valley Educ. Foundation, Inc. v. Eldercare Properties, Ltd. (In re Eldercare Properties, Ltd.),* 568 F.3d 506, 515 ( 5th Cir. 2009).

[32]*See In re Superior Crewboats, Inc.,* 374 F.3d 330, 334 (5th Cir. 2004) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999)); *In re Cahill*, 428 F.3d 536, 539 (5th Cir.2005) (" A bankruptcy court abuses its discretion when it '(1) applies an improper legal standard or follows improper procedures ..., or (2) rests its decision on findings of fact that are clearly erroneous.'").

[33] *In re Missionary Baptist Found. of Am.*, 712 F.2d 206, 209 (5th Cir. 1983) (internal quotation marks omitted) ("A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed.").

[34]*In re Eldercare Properties, Ltd.,* 568 F.3d at 515.

[35]*In re Stanley,* 224 Fed.Appx 343, 346, 2007 WL 1026423 (5th Cir. 2007); *see also In re Mercer*, 246 F.3d 391, 402 (5th Cir. 2001) (holding that the "clear error standard does not apply to findings of fact resulting from application of an incorrect legal standard").

of *res judicata* is a question of law that is reviewed *de novo.*[36]

## IV. Discussion

Both Countrywide and the Trustee urge the court to address the recent Supreme Court decision in *United States Air Funds, Inc. v. Espinosa,* – U.S. –, 130 S.Ct. 1367, 176 L.Ed.2d 158 (2010).   Essentially, the bankruptcy court, relying on language in *Espinosa, supra,* held that the Debtor's confirmed plan was binding on the Trustee and all creditors and should be consummated according to the confirmed plan's terms, despite the fact that it does not provide for the full payment of the Debtor's pre-petition mortgage arrearage.[37]

This court cannot accept the application of *Espinosa* to facts of the case presented here. In *Espinosa,* the debtor had not only achieved plan confirmation without objection, but had completed plan payments and received a discharge under § 1328(a).[38]   The question presented was whether, several years after the debtor's case was closed, a creditor holding the debtor's student loans could have the confirmation order set aside as "void" under Federal Rule 60(b)(4) on grounds that the student loans can only be discharged through an adversary proceeding, and not through a provision in a Chapter 13 Plan, as the debtor had allegedly done.[39]   The debtor in *Espinosa* did provide for payment of his student loans through the Chapter 13 plan, but proposed to pay only the principal and specifically provided in the plan that the accrued interest would be

---

[36]*In re Chesnut*, 356 Fed.Appx. 732, 736, 2009 WL 4885018 * 2 (5th Cir. 2009) (*unpublished*) (citing *Oreck Direct, LLC v. Dyson, Inc.,* 560 F.3d 398, 401 (5th Cir. 2009)).

[37]*In re Stewart,* 2010 WL 3490976 ** 7-8 (Bkrtcy. E. D. La. Aug. 23, 2010).

[38]*United Student Aid Funds, Inc. v. Espinosa*, —— U.S. ——, 130 S.Ct. 1367, 1374, 176 L.Ed.2d 158 (2010).

[39]*Id.* at 376.

discharged on completion of the plan.[40]  The dispute arose when the creditor later attempted to collect the unpaid interest on the loan.[41]

The *Espinosa* Court held that the confirmation order, although in conflict with applicable code provisions, was not "void" and the creditor had failed to demonstrate entitlement to relief under Federal Rule 60(b)(4).[42]  In so holding, the Court found that the creditor's due process rights were "more than satisfied" when it received notice of the filing and contents of the debtor's plan.[43]

In *Espinosa*, the debtor's proposed treatment of his student loans was inconsistent with the Code from the outset – it was "facially invalid," since student loans may only be discharged upon a showing of "undue hardship."[44]  In contrast, it cannot be conclusively determined that a plan fails to comply with §1322(b)(5) until the applicable deadlines for filing and objecting to proofs of claim have passed.

Where the deadline for filing claims falls after the deadline for objecting to a Chapter 13 plan, the failure of a creditor to object to a plan on the grounds that the plan has misstated the amount of the claim cannot, consistent with due process, bind the creditor <u>*with respect to the amount*</u> which the creditor is required to identify no earlier than the deadline for filing proofs of claim.  Thus, the Debtor's proposed Plan treatment of Countrywide's secured claim – payment of

---

[40]*Id.* at 374.

[41]*Id.*

[42]*Id.* at 376-377.

[43]*Id.* at 378.

[44]*Id.* at 378-379; 11 U.S.C. § 523(a)(8).

less than the full pre-petition arrearage – would not, standing alone, preclude the bankruptcy court

from reaching a post-confirmation conclusion that the *amount* of Countrywide's claim for pre-

petition arrearage is greater than that set forth in the Debtor's Chapter 13 plan.

The bankruptcy court concluded:

> Under the precedent set by *Espinosa*, Countrywide's failure to object to its
> treatment under the Plan after notice, results in a reduction of the amount owed
> regardless of the amount set forth in its proof of claim.  That amount forms the
> maximum amount Countrywide may receive for claim.[45]

In *Mendoza v. Temple-Inland Mortgage Corporation*,[46] the Fifth Circuit articulated the

applicable standard, to wit:

> A court may abuse its discretion by erroneously concluding that the law
> does not afford it the discretion to do something.  *See Meadowbriar Home for the
> Children, Inc. v. Gunn,* 81 F.3d 521, 535 (5th Cir. 1996).  Similarly, when a court
> makes a discretionary decision but erroneously believes that the law limits its
> discretion in a certain way (*i.e.*, an incorrect understanding of the law), then it
> abuses its discretion.  Thus where a court's exercise of discretion is premised on an
> erroneous conclusion of law, that constitutes an abuse of discretion in that the
> court failed to understand the full bounds of its discretion.[47]

In this case, the bankruptcy court did both and failed to comprehend the bounds of its

discretion.  Now, having concluded that *Espinosa, supra*, is inapplicable to the facts of this case,

this court reverses and remands to the bankruptcy court for further procedures consistent with this

discussion.

In this regard, the bankruptcy court should, in the first instance, revisit the issue of

---

[45]Reasons for Decision, at p. 16 (Bkrtcy. Rec. Doc. 108).

[46]*Mendoza v. Temple-Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264 (5th Cir. 1997).

[47]*Id.* at 1266.

whether, in fact, this case is one involving an "honest but unfortunate debtor."[48]  In making this determination, the bankruptcy court should be mindful of the premise that the debtor must also comply with the plan and the debtor has not done so in this case.  Additionally, the court should consider the totality of the circumstances including that (1) the difference between a nine-month pre-petition mortgage arrearage contemplated by Debtor's plan and the actual twenty-month pre-petition mortgage arrearage is not a minimal miscalculation – *i.e.*, Debtor failed to include 2/3's of his pre-petition mortgage arrearage in his Chapter 13 plan; (2)  a "drop dead" order issued early on in these proceedings *by consent* against the debtor, (3) despite multiple written and telephonic notifications by the Chapter 13 Trustee, the debtor chose to be absent from and remain unrepresented at all pertinent proceedings including both of the hearings on the Trustee's Motion to Dismiss for Unfeasibility and (4) the last two Motions to Dismiss filed by the Chapter 13 Trustee – one for unfeasibility and the other non-compliance – were *unopposed* despite the Debtor's notification of same.

Suffice it to say, the bankruptcy court was made aware of its reliance on potentially  false statements by the Debtor – *i.e.*, the difference between a nine month and a twenty month pre-petition arrearage, if true, can hardly be attributed to a mere miscalculation.  The Chapter 13 Trustee filed a Motion to Dismiss for Unfeasibility to address the situation which came to light post-confirmation once Countrywide became servicer on the Debtor's house note.

One court's remarks, when faced with a similar situation, bear repetition:

By filing intentionally false schedules and an intentionally false proof of claim, and by providing for payment of a small amount to the IRS, Counsel was

---

[48]*See Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-287 (1991)).

attempting to confirm a plan that should not have been confirmed and thereby obtain a discharge of the debt from which Debtors should not be discharged.

The Court is now aware of the false statements.  It is simply inconceivable that the Court, after becoming aware of the false representations, would be required to issue an order *at some point in the future* that discharges the Debtors (or purports to discharge them) from debts about which they lied to the Court.  To prevent that abuse of process, the Court concludes that it must issue an order under § 105(a) to vacate the plan confirmation order.

In addition to authority under § 105(a), the Court finds authority to vacate the confirmation order in the inherent authority of the court to redress fraud on the Court....

* * *

Because this order vacating the confirmation order issued under § 105(a) and under the Court's inherent authority to redress fraud on the court, there is no time limit on the Court's decision and there is no requirement that a party in interest request relief.[49]

Here too, there was no time limit on the bankruptcy court's decision; however, the matter was, in fact, brought to the bankruptcy court's attention *via* the Chapter 13 Trustee's Motion to Dismiss for Unfeasibility.  (Bkrtcy. Rec. Doc.  79).

The Bankruptcy Code provides that the bankruptcy judge is to confirm the plan only if the plan complies with the provisions of § 1322, among others.[50]   If the Debtor in this case had truthfully filled out his bankruptcy schedules or confected a plan including the full pre-petition arrearage, then the Chapter 13 Trustee should have objected to confirmation or the bankruptcy court on its own authority could have then questioned confirmation.  The bankruptcy court

---

[49]*In re Thomas,* 337 B.R. 879, 888-889 (S. D. Tex. Feb. 13, 2006), *aff'd,* 223 Fed.Appx. 310 (5th Cir 2007) (affirming bankruptcy court's order vacating Chapter 13 plan *sua sponte* 761 days after the confirmation order was entered, noting that a bankruptcy court, a court of equity, has the authority "to frustrate fraud and work complete justice," citing *In re Nikoloutsos,* 199 F.3d 233, 236 (5th Cir. 2000) and *Tex. Co. v. Miller*, 165 F.2d 111, 116 (5th Cir. 1947)).

[50]11 U.S.C. § 1325.

implicitly relied on Debtor's representations and confirmed the Plan .[51]

Only in the event that the bankruptcy court determines that the Chapter 13 Trustee's Unopposed Motions to Dismiss for Unfeasibility and Noncompliance are somehow without merit, should it proceed to reconsider the matter of Countrywide's proof of claim.  However, this time the bankruptcy court's determination should contemplate the copy of Countrywide's Note which was in fact attached to its Response to the Chapter 13 Trustee's Objection.  Considering that the bankruptcy court went all the way back to WAMU's/Countrywide's April 8, 2004 Motion to Lift Stay (Bkrtcy. Rec. Doc. 28) in search of Countrywide's Note, failure to consider said document which was attached in support of Countrywide's January 5, 2010 "Response to the Trustee's Objection to Countrywide's Claim"[52] and thus tendered to the court as evidence in support of its claim constitutes error.

As to the finality of an order allowing proof of claim, the Fifth Circuit explained:

> The bankruptcy court has power to reconsider the allowance or disallowance of proofs of claims "for cause."  11 U.S.C. § 502(j); Bankruptcy Rule 3008.  As the Advisory Committee Note to Bankruptcy Rule 3008 evidences, the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary, as the court may decline to reconsider without a hearing or notice to the parties involved.  If reconsideration is granted, the court may readjust the claim in any fashion "according to the equities of the case." 11 U.S.C. § 502(j).[53]

The Fifth Circuit further explained that:

---

[51]*See e.g., In re Thomas*, 337 B.R. 879, 893 (S. D. Tex. Feb. 16, 2006) (noting that the "Fifth Circuit has emphasized the need for accuracy and integrity in bankruptcy schedules and pleadings citing *In re Superior Crewboats*, 374 F.3d 330 (5th Cir. 2004) and *In re Coastal Plains, Inc*., 179 F.3d 197 (5th Cir. 1999)).

[52]Bkrtcy. Rec. Doc. 84.

[53]*Matter of Colley*, 814 F.2d 1008, 1010 (5th Cir.), *cert. denied*, 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987).

We interpret Rule 9024 to provide that, when a proof of claim has in fact been
litigated between the parties to a bankruptcy proceeding, the litigants must seek
reconsideration of the bankruptcy court's determination pursuant to the usual
[FRCP] Rule 60 standards if they elect not to pursue a timely appeal of the original
order allowing or disallowing the claim.  The elaboration of Section 502(j)'s
requirement of "cause" for reconsideration by the Rule 60 criteria substantially
eliminates the "tension with the right of an appeal from an erroneous final order."
3 Collier on Bankruptcy (15th ed.) ¶ 502.10 at 502-107.  See also *In re Hurley, Inc.,
supra.*[54]

Additionally and regarding the allowance of a proof of claim, in *Matter of Baudoin*, 981

F.2d 736 (5th Cir. 1993), the Fifth Circuit observed:

*Colley* is a Chapter 13 case. In the case before us, of course, the judgments
asserted as preclusive arose in the context of Chapter 7 bankruptcies.  However,
the allowance of a proof of claim in a Chapter 13 case is no more "final" than such
allowance in a Chapter 7, as the Code provisions governing proofs of claim, 11
U.S.C. §§ 501-02, apply equally to cases filed under Chapters 7, 11, 12 and 13. 11
U.S.C. § 103(a).[55]

Accordingly, the claim allowance process bears close inspection and is generally triggered by a

creditor's filing of a proof of claim in the bankruptcy case.[56]   Unless a party in interest files an

objection, the claim is "deemed allowed."[57]

In this case, Countrywide did not file its proof of claim until August 21, 2007.[58]   This

court observes that nothing in 11 U.S.C. § 1322(b)(2), *In re Simmons,* 765 F.2d 547 (5th Cir.

1985) or *Nobleman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228

(1993) suggests that a secured creditor with a lien on the debtor's home is entitled to simply claim

---

[54]*Id.*

[55]*Matter of Baudoin*, 981 F.2d 736, 742 n. 15 (5th Cir. 1993).

[56]*See* 11 U.S.C. § 501.

[57]*Id.* at § 502(a).

[58]*See* Claims Register, POC No. 7.

whatever it wishes, with no obligation to support the claim.[59]   Although § 1322(b)(2) gives

holders of secured homestead interests considerable protection, it does not give them *carte*

*blanche* to claim any fees.[60]   "Creditors have a panoply of contractual rights under § 1322(b)(2),

but the right to charge *unreasonable* fees has never been among them."[61]

In *In re Simmons*, 765 F.2d 547 (5th Cir.1985), the Fifth Circuit held that Chapter 13 plan

may not substitute for an objection to a secured creditor's proof of claim.[62]   Once the creditor has

filed a proof of claim, "the Code and the Rules clearly impose the burden of placing the claim in

dispute on any party in interest desiring to do so by means of filing an objection."[63]   Under

*Simmons,* a secured creditor is not bound by a plan which purports to reduce its claim where no

objection to the plan has been filed.

In *Sun Finance Company, Inc. v. Howard (In re Howard),* 972 F.2d 639 (5th Cir. 1992),

---

[59]*See In re Kirkland*, 572 F.3d 838, 841 (10th Cir. 2009) (In the face of an objection to a proof of claim, the creditor bears the ultimate burden of persuasion as to the validity and amount of the claim.); *see also* 11 U.S.C. § 502 (allowing a party in interest to object to claims); *In re Leverett*, 378 B.R. 793, 804-805 (Bkrtcy. E. D. Tex. 2007) (sustaining Debtor's objection because creditor did not establish it held a legally enforceable agreement supporting its claim).

[60]*In re Sanchez,* 372 B.R. 289, 305-06 (Bkrtcy. S. D. Tex July 24, 2007) ("Requiring a creditor to affirmatively demonstrate that its fees are reasonable does not modify a creditor's right to collect such fees.")

[61]*Id.* at 306 (emphasis in original).

[62]In *Simmons*, a creditor who had perfected a statutory lien was incorrectly listed in the debtor's plan as an unsecured creditor. The creditor indicated that he would approve the plan, but added the proviso that he must be listed as a secured creditor. The creditor did not object to the plan at the confirmation hearing and his status under the plan was never corrected. The debtor argued that because the creditor had failed to object to the plan's confirmation he was bound by its terms and his lien was therefore invalid. The Fifth Circuit disagreed, holding that a Chapter 13 plan may not substitute for an objection to a secured creditor's proof of claim.  *In re Simmons*, 765 F.2d 547, 552 (5th Cir.1985).

[63]*Id.*

the Fifth Circuit addressed a factual situation involving a Sun Finance mortgage on two of the debtor's properties.  Debtor scheduled Sun Finance as a secured creditor and Sun Finance filed a proof of claim to that effect prior to confirmation.  No objection to the proof of claim was filed by debtor.[64]

The plan provided that Sun Finance be paid $500 in full satisfaction of its secured claim. Sun Finance received notice of the filing of the bankruptcy petition, the meeting of creditors, and the confirmation hearing. Sun Finance did not receive a copy of the plan, although the notice of the confirmation hearing provided some of the plan's terms.  The Fifth Circuit, considered the effect of plan confirmation under § 1327(a), along with the procedures for objection, including (1) § 502 (a), (2) § 506(a) and (3) FRBP 3001[65] and 3007.[66]    Balancing these competing provisions of the Code, the Fifth Circuit held:

> [A] Chapter 13 plan which purports to reduce or eliminate a creditor's secured claim is *res judicata* [sic] as to that creditor only if the debtor has filed an objection to the creditor's claim.  If no objection is filed to a secured claim, the creditor is entitled to rely upon its lien and not participate in the bankruptcy proceedings.[67]

In *In re Cook*, 25 F.3d 1043 (5th Cir. 1994), the Fifth Circuit further explained its holding in *Howard* and *Simmons, supra,* to wit:

> *Howard* turns not on the mere fact of notice to the secured creditor that the debtor seeks to modify its claim in a plan, but on a re-affirmation of *In re Simmons*, 765

---

[64]*Sun Finance Company, Inc. v. Howard (In re Howard)*, 972 F.2d 639, 640 (5th Cir.1992).

[65] FRBP 3001 provides that a proof of claim is a *prima facie* evidence of the validity and amount of the claim.

[66]FRBP 3007 provides the procedure for objection to a proof of claim.

[67]*In re Howard*, 972 F.2d at 639.

F.2d 547 (5th Cir.1985), which held that the debtor must affirmatively object to a secured claim, pursuant to 11 U.S.C. § 506(a), and the associated Bankruptcy Rules 3007 and 9014, in order to modify or avoid the creditor's lien in bankruptcy. *Simmons* points out the difference between plan confirmation procedure, which is not ordinarily intended to be the arena for resolving individual claims, and the adversary process by which claims are disputed.  By collapsing the secured creditor's ability to object to the plan into his right to preserve his lien intact absent an objection to his claim, the bankruptcy court effectively rendered the claims objection process meaningless.

* * *

*Simmons* demonstrated that "a proof of secured claim must be acted upon-that is, allowed or disallowed-before confirmation of the plan or the claim must be deemed allowed for purposes of the plan."  *Simmons*, 765 F.2d at 553, citing 11 U.S.C. §§ 502(a), 506(a), 1325(a)(5). When this procedure is followed, the § 506 valuation hearing will be binding on plan confirmation, and the two-shot objection evaporates.[68]

The court finds in this case that, while it was appropriate for the bankruptcy court to review of Countrywide's proof of claim, the creditor was not sufficiently on placed on notice that the substance of its claim was placed at issue.  There was no challenge pursuant to 11 U.S.C. § 502(j) raised by any party.  Countrywide was also not so informed by the Trustee's Motion to Dismiss for Unfeasibility, the December 2009 hearing on the Trustee's Motion to Dismiss, the Trustee's Objection which was singularly predicated on the basis of timeliness or the January 12, 2010 hearing on both the Chapter 13 Trustee's Motion to Dismiss and the Trustee's Objection.  Countrywide was given no clue that the substance of its proof was at issue until bankruptcy court's order issued *after the January 12, 2010 hearing*.[69]   Thereafter, no hearing was scheduled

---

[68]*Boyle Mortgage Co. v. Cook (In re Cook)*, 25 F.3d 1043, 1994 WL 261083 ** 2-3 (5th Cir. 1994) (unpublished)(relying on *Howard* and *Simmons*, *supra*, refusing to bind Boyle Mortgage Co. To the terms of the plan even though it received a copy of the plan and knew that it proposed a reduction of the secured claim and holding that a debtor "must affirmatively object to a secured claim, pursuant to § 506 (a) and associated Bankruptcy Rules 3007 and 9014, in order to modify or avoid a creditor's lien in bankruptcy").

[69]*See* Order dated January 14, 2010 (Bkrtcy. Rec. Doc. 87).

24

and Countrywide was not apprised of any particular discrepancy or dispute that anyone had with the substance of its proof of claim.  Additionally, on February 25, 2010, the Trustee filed yet another Motion to Dismiss, this last time on account of Debtor's noncompliance by failing to make plan payments. (Bkrtcy. Rec. Doc. 104).

The record does not support the bankruptcy court's determination pursuant to either Rule 60(b)(3)[70] or Rule 60(b)(5).  Among other things, Rule 60(b) requires that a motion be filed "within a reasonable time."   As previously mentioned, no § 502(j) motion was ever filed and the Trustee's Objection predicated timeliness was filed two years after Countrywide's claim was allowed.   Moreover and as the Trustee advised the bankruptcy court, even if Countrywide or its predecessor had timely filed proof of claim, Debtor's claim would have in all likelihood been dismissed in June of 2004 for unfeasibility because Mr. Stewart would have to double his monthly installments to $399.00 per month and his Schedules clearly reflected no additional income with which to pay such an increased installment.[71]  In any event, any prejudice to the Debtor was manifest in August of 2007, when Countrywide's claim was allowed.[72]

In *Marrama v. Citizens Bank of Mass.*, the Supreme Court held, § 105(a) grants

---

[70]To prevail under Rule 60(b)(3), the party must establish that (1) the adverse party engaged in fraud, misrepresentation or other misconduct; and (2) this misconduct prevented the moving party from fully and fairly presenting his case.  *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005).

[71]*See* Trustee's Post-Hearing Memorandum at p. 4 (Bkrtcy. Rec. Doc. 93).

[72]*See* Countrywide's Motion to Allow Late Filed Proof of Claim filed July 5, 2007 at ¶ 2 (listing Twenty (20) Payments @ $630.25 per month ($12,605.00), Uncollected Late Charges $233.69, Accrued Late Charges $504.20, Foreclosure Fees & Costs $750.00, Inspection Fees $143.25, Appraisal $30.30 and NSF Fee $25.00, Total Arrearage Due $16,404.23)(Bkrtcy. Rec. Doc. 70); Order Allowing Proof of Claim filed August 16, 2007 (Bkrtcy. Rec. Doc. 73); *compare* Chapter 13 Plan filed by Debtor on October 30, 2003 at ¶ 5 (indicating amount of pre-petition arrearage to be cured as $5,622.41) (Bkrtcy. Rec. Doc. 2).

bankruptcy judges "broad authority ... to take any action that is necessary or appropriate 'to prevent an abuse of process.' "[73]  The Fifth Circuit has held that § 105(a) is to be "interpret[ed] liberally," so long as any action taken pursuant to § 105(a) is "consistent with the rest of the Bankruptcy Code."[74]  Section 105(a) thus permits bankruptcy courts to "fashion such orders as are necessary to further the substantive provisions of the Bankruptcy Code."[75]  However, Section 105(a) does not "authorize the bankruptcy courts to create substantive rights otherwise unavailable under applicable law, or constitute a roving commission to do equity."[76]  Further explaining this point, the Supreme Court has held that "[u]nder this section, a court may exercise its equitable power only as a means to fulfill some specific Code provision."[77]

Finally, the bankruptcy court's discharge order issued in error.  Under 11 U.S.C. § 1328(a), a chapter 13 debtor is entitled to a discharge:

> [a]s soon as practicable *after completion* by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for in the plan or disallowed under section 502 of

---

[73]*Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S.Ct. 1105, 1111–12, 166 L.Ed.2d 956 (2007) (quoting § 105(a)).

[74]*Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995).

[75]*Perkins Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994) (quoting *Chiasson v. Bingler (In re Oxford Management Inc.)*, 4 F.3d 1329, 1333 (5th Cir. 1993)).

[76]*Id.* (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

[77]*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988).  *See also Perez v. Peake (In re Perez)*, 373 B.R. 468, 488 (S. D. Tex. 2007) (noting that "*Marrama* upheld a pragmatic remedy fashioned by a bankruptcy judge under section 105(a) to achieve a result that the Code clearly required, despite the apparently inconsistent approach of another Code section that was unclear or ambiguous").

this title....[78]

The plain language of the statute indicates that the debtor is entitled to a discharge only after a chapter 13 debtor completes all payments.   The Debtor in this case had not only failed to complete all payments but was in arrears with respect to payments due under the plan.[79]

## V. Conclusion

This court, having reviewed the record, finds that the bankruptcy court erred in its application of *Espinosa, supra,* to the facts of this case and that such error amounts to an abuse of discretion.   Additionally, such error affects the substantial rights of Countrywide, otherwise a secured creditor entitled to the protections of 11 U.S.C. § 1322(b)(2).[80]   Accordingly and for reasons discussed above, the court REVERSES and VACATES the judgment of the United States Bankruptcy Court for the Eastern District of Louisiana and REMANDS for further proceedings consistent with the foregoing discussion, including a rehearing, in the first instance, of the Chapter 13 Trustee's Unopposed Motions to Dismiss for Unfeasibility and Noncompliance and then, if necessary, reconsideration Countrywide's Proof of Claim.

**IT IS SO ORDERED**.

New Orleans, Louisiana, this <u>13th</u> day of May, 2011.

---

[78]11 U.S.C. § 1328(a) (italicized emphasis added).

[79]*See* Chapter 13 Trustee's Motion to Dismiss for Noncompliance filed February 25, 2010 (Bkrtcy. Rec. Doc. 104).

[80]Section 1322(b)(2) of Title 11 provides that the Chapter 13 plan may:
modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

_____

A. J. McNAMARA
UNITED STATES DISTRICT JUDGE